PER CURIAM.
The defendants, Security Management Corp. [SMC], Victor Posner, Gail P. Posner, and Steven Posner, as Trustees under Irrevocable Trust Agreement for Victor Posner [hereinafter collectively referred to as “the clients”], appeal from a final judgment entered in favor of the estate of Marion E. Sibley and Buchbinder & Elegant [hereinafter referred to as “the attorneys”]. We affirm.
This case involves an attorneys’ fee dispute between attorneys and clients arising from ad valorem tax litigation. The attorneys sued the owners of the subject property,- SMC and the Posner trust, based on an alleged oral contingent fee contract entered into in 1983 between Ira Elegant and Victor Posner which, according to the attor *1034 neys, entitled them to a percentage of the tax savings accomplished by the attorney. Posner is the principal and controlling party of SMC and the Posner trust.
The attorneys contend that all tax cases involving property controlled by Posner were routinely handled on a contingent fee basis. Posner testified that he told the attorneys that this tax litigation was different from the other cases they were handling and that they were to send him a bill based on time spent working on these cases.
The jury was asked to determine whether there was an oral contract for a contingency fee and, if not, the amount of the reasonable value of the legal services rendered. The jury returned a special interrogatory verdict finding that the clients had not breached a contract to pay the attorneys and that the reasonable value of the legal services performed was $500,-000.00. Then, the trial court granted the attorneys’ post-trial motion for judgment notwithstanding the verdict and their alternative motion for a new trial. The trial court entered a final judgment for the attorneys for $958,241.73, the exact amount claimed under the alleged oral contingent fee contract, plus prejudgment interest. The clients appeal.
The clients contend that the oral contingency agreements are unconscionable and void. However, the contracts in question were entered into prior to January 1, 1987, the effective date of rule 4-1.5, Rules Regulating the Florida Bar. In Isaak v. Chardan Corp., 532 So.2d 1364 (Fla. 2d DCA 1988), the court held that the evidence supported the existence of an oral contingency fee agreement. The agreement enforced in Isaak was entered into at about the same time as the agreement in the instant case. Therefore, the trial court properly refused to apply the new rules to the agreement and enforced the oral contingency fee agreement.
The attorneys would like to be compensated in accordance with the contingency fee agreement they allege they had with the clients. The attorneys contend that all tax cases involving property controlled by Posner were routinely handled on a contingent fee basis. Only two persons could have, and did, testify as to whether an oral contingent fee contract did or did not exist. These two individuals were Elegant and Posner. In fact, Posner was the defendants’ sole fact witness.
Elegant testified that he sent a fee agreement to SMC. This fee agreement, like previous ones, was never countersigned. Posner did not deny the fact that his company had received this agreement. The following excerpts from Posner’s testimony, as recorded in the trial transcript, support the attorneys’ position:
Q. Do you recall the type of fee arrangement that existed in the work that Mr. Elegant did in connection with the tax equalization work?
How was that handled?
A. I think he handled it on a basis of whatever he would get he would get a portion of bringing the taxes down. He would get a portion of the statement.
Q. And, if he did not bring the taxes down, would he get any money?
A. No.
Q. Was that an arrangement or an agreement that you had made with Mr. Elegant concerning those tax cases?
A. I don’t know how it came about. I know it came about. [TR 770-71]
Posner testified that he did not remember speaking with Elegant about anything in the tax cases in question. Specifically, he said as follows:
Q. You have a recollection of ever speaking to Mr. Elegant concerning those particular tax cases?
A. I imagine when I would see him, if he would come by the house or something like that, yes. But as far as me discussing it with him, no. I did not see — whatever he did, he did. I took it for granted he did it right. [TR 772]
Posner further testified that he would not be consulted regarding these cases:
Q. Do you recall any conversation concerning any discussions involving Marion Sibley?
A. In reference to what?
*1035 Q. In connection with the legal action to be initiated concerning the tax assessment.
A. I may have or may not, because they would automatically handle it. They would not consult me on that. [TR 785]
Posner admitted that the attorneys were given the 1983 case to be handled the same way as the previous cases. Posner testified:
Q. Was it not your testimony on direct examination when the 1983 tax assessment information came in, that it was routinely handled the same way by Ira [Elegant]?
Did you not say that?
A. Absolutely. [TR 790]
As additional support for their position the attorneys argue that Posner and SMC would periodically request that their attorneys furnish audit confirmation reports to their auditors, Arthur Anderson & Co. The attorneys reported that the subject tax cases were handled on a contingency fee basis. The attorneys sent copies of these letters to Posner. After Arthur Anderson verified these reports, these contingent fees were reported as a liability in SMC’s financial statements.
Elegant testified that even as late as July 11, 1986, he reported that he was handling the 1983 tax case on a contingent fee basis. Then, on October 24, 1986, SMC sent a letter to Arthur Anderson attesting to the accuracy of the accounting records which Arthur Anderson prepared. Posner signed the letter.
Posner testified that he could not recall having a conversation with Elegant about this particular case. Posner did not discuss the attorneys’ fees in the case with Elegant until he got the bill. Posner contends that he had no knowledge of the statement for attorneys’ fees until after this lawsuit was filed. Posner concedes that the attorneys are entitled to compensation for their legal services, but disputes the existence of a contingency fee agreement. Posner is willing to pay the attorneys on an hourly basis. Posner testified that he told the attorneys that this tax litigation was different from the other cases they were handling and that they were to send him a bill based on time spent working on these cases. Posner testified as follows:
Q. And it is your position that you owe the money, but you don’t owe them money under the contingency fee contract; is that correct?
A. It is my position as I spoke to him and I testified in my deposition that I was satisfied because he had done the work, and the other deal expired, whatever it was, and that I certainly would be willing to sit down and pay him because I know he could handle the work on a per hourly basis. [TR 834-35]
The record reveals that there was overwhelming evidence in favor of the attorneys. Posner’s testimony did not refute the existence of a contingency fee agreement. He simply testified that he did not recall a conversation taking place. Pos-ner’s testimony did not rebut the presumption of the continued existence of the contingency fee agreement based on the parties’ prior dealings. See § 671.205, Fla. Stat. (1991) (defining “course of dealing” as previous conduct between parties which establishes common basis of understanding). For these reasons, the trial court properly entered a judgment notwithstanding the verdict in favor of the attorneys. See Insurance Co. of State of Pa. v. Estate of Guzman, 421 So.2d 597, 602 (Fla. 4th DCA 1982) (trial court erred in denying appellee’s motion for directed verdict where appellants failed to rebut inference of negligence).
Having reached this conclusion, we find it unnecessary to address the remaining issue raised on appeal.
Affirmed.
BASKIN and GODERICH, JJ„ concur.